UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE LEWIS, | ) | CASE NO. 1:23-cr-436 |
| | ) | CASE NO. 1:25-cv-899 |
| Defendant-Petitioner, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Plaintiff-Respondent. | ) | |

Before the Court is Defendant-Petitioner Andre Lewis' ("Lewis") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 38.) The United States of America (the "government") opposed (Doc. 42), and the matter is ripe for review. For the reasons stated herein, Lewis' Motion is DENIED.

I.  **BACKGROUND**

On August 9, 2023, a federal grand jury returned a six-count Indictment charging Lewis with the following offenses: Distribution of Controlled Substances, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 1-3, 5-6), and Using or Carrying a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Count 4). (Doc. 1, Indictment.)[1]

A.  **Binding Plea Agreement and Change of Plea Hearing**

On February 15, 2024, Lewis pleaded guilty pursuant to a binding Rule 11(c)(1)(C) plea agreement. (Doc. 33, Plea Agreement.) The plea agreement set forth, among other things, the statutory penalties, a stipulated offense level computation, appeal waiver (with reservation of

---

[1] The statutory penalty for a § 924(c) offense is five years of incarceration to be served consecutively to any term of incarceration imposed for the underlying controlled substance offenses. 18 U.S.C. § 924(c)(1)(A)(i).

appeal rights), and Lewis' satisfaction with defense counsel. (*Id.*). The parties stipulated to a base offense level of 20 pursuant to U.S.S.G. § 2D1.1(a)(5), and Lewis's proper designation as a career offender pursuant to § 4B1.1(b)(3). (*Id.* at 295.)[2] Anticipating acceptance of responsibility, the stipulated total offense level was 29. (*Id.*) Notwithstanding the offense level calculation and career offender designation, the parties agreed to a 138-month term of incarceration for the controlled substance offenses plus the mandatory 60-month term for using or carrying a firearm in relation to a specified controlled substance offense. (*Id.* at 294.) The total agreed-upon term of incarceration was 198 months. (*Id.*)

Lewis was placed under oath at the beginning of the change of plea hearing. (Doc. 41, Change of Plea Tr., at 355.) In response to the Court's questions, Lewis represented that he discussed all the facts and circumstances surrounding the case with defense counsel. (*Id.* at 358.) Lewis reiterated being fully satisfied with his defense counsel's advice to him and representation of him. (*Id.*) When asked if he was entering into the terms of the plea agreement voluntarily and of his own free will, Lewis responded: "Yes, Your Honor." (*Id.* at 359.)

Sentencing was addressed. (*Id.* at 365-68.) Lewis acknowledged that the Court alone determines the offense level calculation, his criminal history category, and the corresponding advisory Guidelines range. (*Id.*) He further stated understanding that the Court alone would determine the appropriate sentence. (*Id.* at 365.) Notwithstanding, Lewis acknowledged his plea agreement stated an agreed-upon term of incarceration of 198 months. (*Id.* at 367.)

The prosecutor summarized the factual basis. (*Id.* at 369-71.) Lewis acknowledged the factual basis and agreed the government could prove those facts – and therefore each element of

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

each offense charged – beyond a reasonable doubt.  (*Id.* at 372.)  Moving to the appellate waiver provision, Lewis acknowledged discussing his appeal rights with counsel.  (*Id.*)  He also acknowledged waiving his appeal rights except for two: (1) the right to appeal any sentencing exceeding the statutory maximums, and (2) the right to appeal a term of incarceration exceeding 198 months.

The voluntariness of Lewis' plea was addressed at three different times, twice with respect to his plea agreement and again before the Court asked how he intended to plead.  (*Id.* at 359, 360, 373.)  Lewis acknowledged signing the plea agreement knowingly and voluntarily:

> COURT:    [Y]ou signed [the agreement] making this representation to the Court: That you have read the entire document and have discussed it with your counsel, you've initialed each page to signify that you understand and approve of the provisions on that page, that you're entering into these terms voluntarily and of your own free will, that no threats had been made to you, nor were you under the influence of anything that could impair your ability to understand the terms of this document.
>
> Is that, in fact, your representation to the Court?
>
> LEWIS:    Yes, Your Honor.

(*Id.* at 359.)  After this exchange, the Court inquired further:

> COURT:    Mr. Lewis, do you believe that this document, all of these terms, represent your full agreement with the Government?
>
> LEWIS:    Yes, Your Honor.
>
> COURT:    Beyond this document, did anyone make any other promises or assurances to you to persuade you into pleading guilty?
>
> LEWIS:    No, Your Honor.
>
> COURT:    Did anyone threaten you or do anything to force you to accept these terms?
>
> LEWIS:    No, Your Honor.

(*Id.* at 360.)  Before asking Lewis how he intended to plead to the charges, the Court inquired

further:

> COURT: [A]re you prepared to voluntarily change your plea, knowing, understanding, and agreeing to all of the terms on all of the pages you've initialed?
>
> LEWIS: Yes, Your Honor.

(*Id.* at 373.)

Lewis pleaded guilty to all counts. (*Id.* at 373-74.) The Court deferred acceptance of the plea agreement but determined that Lewis was fully competent and capable of entering informed pleas, was aware of and understood the consequences of his guilty pleas, and that his pleas were knowing and voluntary. (*Id.* at 374.)

### B. Final Presentence Report

The Final Presentence Report ("PSR") differed from the plea agreement in two critical respects. First, the plea agreement stipulated to a base offense level of 20. (Doc. 33 at 295.) However, the Guidelines treat 4-ANPP as a fentanyl analogue, so the PSR correctly determined the base offense level was 24. And while the plea agreement stipulated to Lewis being designated a career offender – a designation that elevated Lewis' offense level to 32 – the plea agreement did not stipulate to the application of § 4B1.1(c)(3). This section plainly applied and resulted in an advisory Guidelines range of 262-327 months for the controlled substances offenses. U.S.S.G. § 4B1.1(c)(3).

The PSR properly set forth the offense level calculation. And the PSR correctly determined the advisory Guidelines range for the controlled substance offenses was 262-327 months. The parties' stipulated offense calculation in the plea agreement was more favorable to Lewis. Under the plea agreement, the parties' stipulated offense level resulted in an advisory Guidelines range of 151-188 months for the controlled substance offenses. And notwithstanding

that advisory Guidelines range, the parties further stipulated that a downward variance to a 138-month term of incarceration for the controlled substance offenses was appropriate.

Defense counsel timely objected to the base offense level determination of 24. (Doc. 30 at 269.) Defense counsel also submitted a sentencing memorandum further objecting to the base offense level calculation and asserting that the Section 3553(a) factors supported adopting the parties' plea agreement. (*See* Doc. 32.)

### C. Sentencing Hearing

At the beginning of the sentencing hearing, Lewis stated he had insufficient time to meet with defense counsel. (Doc. 37, Sentencing Tr., at 318-19.) He claimed to not fully understand why the plea agreement stated a base offense level of 20 and the PSR stated a base offense level of 24. (*Id.* at 323.) To Lewis, the base offense level of 20 should apply and he should receive the three-level reduction for acceptance of responsibility. (*Id.*) With a total offense level of 17 and a criminal history category VI, his advisory Guidelines range should be 70-87 months. (*Id.*)

But, as explained by defense counsel, this argument did not address Lewis' career offender designation. (*Id.* at 320-22, 325-26.) Lewis acknowledged knowing and understanding that he was properly deemed a career offender. (*Id.* at 324, 326.) The Court heard from defense counsel about the differing calculations as well as the numerous occasions on which they spoke about the terms of the plea agreement and PSR. (*Id.* at 321-22, 325-26.) The Court also spoke with Lewis at length. (*Id.* at 323-27.) Lewis was given additional time to speak privately with defense counsel. (*Id.* at 327.) After doing so, he told the Court he had sufficient time to review and discuss the report with defense counsel. (*Id.*)

No objection was stated to Lewis' criminal history calculation. While Lewis' subtotal criminal history score rendered him a natural Criminal History Category VI (he had 16 criminal

history points), the career offender designation separately placed Lewis in a Criminal History Category VI. (*Id.* at 329; *see also* Doc. 30 at 254-55.) Thus, the Court determined that the advisory Guidelines range for the controlled substance offenses was 262-327 months. (*Id.*) As noted during the sentencing hearing, accepting the parties' recommended term of 138 months for the controlled substance offenses necessitated a significant downward variance. (*Id.*)

After listening to arguments from counsel and Lewis' allocution, the Court shared specific observations. First, the negotiated plea agreement fashioned a sentence that was far below the advisory guideline range. (*Id.* at 337.) Second, in his interactions with defense counsel, Lewis listened, asked questions, and remained engaged in the proceedings. (*Id.* 336.) Finally, the Court noted that Lewis appeared to fully understand the proceedings and answered all of the Court's questions. (*Id.*)

The Court accepted the Rule 11(c)(1)(C) agreement and sentenced Lewis to a combined 198-month term of incarceration, 138 months for the controlled substance offenses and a consecutive 60-month term for possessing a weapon in relation to a drug trafficking offense. (*Id.* at 339.)

        D.       **Lewis' § 2255 Motion**

Lewis challenges his defense counsel's effectiveness at the change of plea and sentencing phases. (*See* Doc. 38.) As to the decision to enter into the plea agreement and plead guilty, he claims (1) he was not fully informed about the career offender designation, and (2) he was forced by his defense counsel to accept a lengthy plea deal that involved "giving up all [] rights on appeal." (*Id.* at 347-48.) To Lewis, he "didn't want to agree to the terms of the plea." (*Id.* at 348.) At sentencing, Lewis asserts defense counsel was ineffective for failing to address the base

offense level consistent with the "drug table" and unspecified inaccuracies in his criminal history computation.  (*Id.* at 347.)

## II. LAW AND ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct the judgment of conviction and sentence based on claims that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  It is therefore the petitioner's burden to demonstrate "'(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of law or fact that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

*Pro se* § 2255 petitions are liberally construed.  *McCormick v. Butler*, 977 F.3d 521, 528 (6th Cir. 2020).  "But the liberal construction rule does not 'abrogate basic pleading essentials,' . . . such as the requirement that a § 2255 petitioner state the factual bases underpinning every claim for relief." *Jimenez v. United States*, No. 21-5201 2022 WL 2610337, 2022 U.S. App. LEXIS 18863, at *8 n.3 (6th Cir. July 8, 2022) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

Claims of ineffective assistance of counsel, like those raised here, must be assessed using the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984), two-pronged framework.  This is petitioner's burden.  *Strickland*, 466 U.S. at 687.  To meet this burden, Lewis must establish both *Strickland* prongs by a preponderance of the evidence.  *See United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020).

The first *Strickland* prong requires a petitioner to establish his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Meaning, in viewing the record as a whole, the alleged "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The second *Strickland* prong requires demonstrated prejudice: "[t]he defendant must show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

Every criminal defendant is entitled to effective assistance of counsel during the plea and sentencing phases. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). A petitioner who pleaded guilty must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea . . . ." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). "Judicial scrutiny of counsel's performance must be highly deferential" and evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Strickland*, 466 U.S. at 689.

A. **Effectiveness of Representation at the Change of Plea Phase**

In support of his assertion that defense counsel was constitutionally deficient at the change of plea phase, Lewis claims he pleaded guilty without understanding federal sentencing procedures, the career offender designation, or that he was waiving "all" of his appeal rights. (Doc. 38 at 347-48.) Lewis also claims defense counsel pressured him into accepting the plea agreement. (*Id.*) Each of these challenges is "inherently incredible." *Valentine*, 488 F.3d at 334.

Federal sentencing procedures were discussed at length. Lewis avers he "didn't understand how the drug table and career offender table worked to determine my sentence[ing] guidelines and not the judge who would be listening to [his] sincere plea for mercy and

leniency." (Doc. 38 at 348.) In writing and under oath, Lewis acknowledged the following: sentencing rests with the discretion of the Court; the Court alone will determine the appropriate offense level, his criminal history category, and the appropriate Guidelines range; that the parties Rule 11(c)(1)(C) agreement could be accepted, rejected, or deferred; he will be designated a career offender with a corresponding offense level of 32; and his express agreement to a combined term of incarceration of 198 months. (Doc. 33; Doc. 41 at 365-68.) Lewis initialed each page of his plea agreement, including the page that specified the parties' stipulation that his career offender designation would override the base offense level determined using the "drug table" set forth in U.S.S.G. § 2D2.1. (Doc. 33.) Lewis acknowledged the stipulated offense level in the plea agreement and at the change of plea hearing. (Doc. 41 at 366.)

As for the appeal waiver, Lewis' description of the waiver is inconsistent with the plain language of the plea agreement as well as his statements to the Court during the change of plea hearing. (Doc. 33 at 295-96; Doc. 41 at 372.) The appeal waiver did not state that all appeal rights were waived. Indeed, and as Lewis acknowledged, he maintained the right to appeal any sentence in excess of the statutory maximum and any sentence that exceeded the 198-month stipulated term of incarceration. (*Id.*)

Lewis' contention his defense counsel pressured him into accepting the terms of the Rule 11(c)(1)(C) agreement is belied by the record. At the beginning of the change of plea hearing, Lewis acknowledged being satisfied with his counsel's advice to him and representation of him. (Doc. 41 at 358.) He testified to his understanding and acceptance of every term of the plea agreement. (*Id.* at 359, 373.) Lewis also testified that no one had pressured him in any way to accept the terms of the agreement. (*Id.* at 359, 360, 373.) Before asking Lewis how he would plead to the charged offenses, the Court asked this question: "are you prepared to voluntarily

change your plea, knowing, understanding, and agreeing to all of the terms on all of the pages you've initialed?" (*Id.* at 373.) Lewis responded: "Yes, Your Honor." (*Id.*) The same acknowledgements are set forth in the plea agreement Lewis initialed and signed. (Doc. 33.)

At bottom, the Rule 11(c)(1)(C) agreement Lewis knowingly and voluntarily accepted did not usurp the Court's independent consideration of the Section 3553(a) factors to ensure the sentence imposed was sufficient but not greater than necessary. His awareness of the nature and consequences of the plea was detailed in the written agreement and addressed during the change of plea hearing. (*Id.* at 302; Doc. 41 at 374.) The negotiated plea agreement was highly favorable to Lewis in that the agreed-upon sentence was for considerably less time than what the advisory Guidelines range provided. Under the plea agreement, the parties agreed to 138 months for the controlled substances offenses. The advisory Guidelines range for those offenses, based on the career offender designation, was 262-327 months of incarceration.

Lewis' challenges to his counsel's performance at the change of plea stage do not establish either *Strickland* prong. Defense counsel negotiated a favorable plea agreement. The plea agreement stated a below-Guidelines range of 138-months of incarceration - 124 months **below** the low-end Guidelines range. Lewis knowingly and voluntarily agreed to the terms of his plea agreement. The allegations in Lewis' motion are wholly unsupported by the record. Defense counsel's performance was neither objectively unreasonable nor prejudicial to Lewis.

      **B.**    **Effectiveness of Representation at the Sentencing Phase**

Lewis asserts his defense counsel was not diligent before or during sentencing because counsel did not address the discrepancies in drug weights or the inclusion of certain portions of his criminal history computation. (Doc. 38 at 347.) In three separate ways defense counsel addressed the offense level discrepancy: by objecting to the PSR, filing a sentencing

memorandum, and at the sentencing hearing.  (*See* Doc. 30 at 269; Doc. 32; Doc. 37 at 320-22, 325-26.)  The discrepancy was explained in full during the sentencing hearing.  But even if defense counsel did not raise the discrepancy in his objections to the PSR or in the sentencing memorandum, or even if the Court did not address it during the sentencing hearing, the fact remains that the difference in base offense levels has no import here because Lewis was properly designated a career offender.  Consistent with the parties' offense level stipulation in the plea agreement, Lewis' base offense level was increased to 32.

Lewis also challenges the inclusion of certain offenses in his criminal history computation.  (Doc. 38 at 347.)  Lewis does not identify which offenses he believes were improperly included.  (*Id.*)  He does not identify which offenses he directed his defense counsel to investigate.  (*Id.*)  It is Lewis' burden to present facts that would support his assertion that defense counsel was constitutionally ineffective.  *Strickland*, 466 U.S. at 687.  With no facts provided, Lewis has not met his burden.

But even if Lewis alleged facts that could call defense counsel's failure to object into question, Lewis has not and cannot establish prejudice for the same reason he cannot do so with respect to the different base offense levels.  Lewis stipulated to being a career offender in his plea agreement.  (Doc. 33 at 295.)  He testified to knowing and understanding this designation.  (Doc. 37 at 324, 326.)  The PSR separately determined that Lewis' criminal history necessitated a career offender designation.  Career offenders are placed in Criminal History Category VI regardless of the subtotal criminal history score.  Even if Lewis received a lower base offense level for drug weight, and even if the unidentified challenge to his criminal history computation was successful, his offense level and criminal history category were determined by his career offender designation.

Lewis' challenges to his counsel's performance at the sentencing stage do not establish either *Strickland* prong. Defense counsel objected to the PSR's base offense calculation for the controlled substance offenses. Defense counsel argued for and persuaded the Court to accept the parties' agreement to a 124-month variance for the controlled substance offenses. As for Lewis' unexplained challenge to the inclusion of certain criminal history points, this assertion is too vague for consideration. It also has no measurable effect. As a career offender, Lewis was a Criminal History Category VI. To the extent Lewis specifically challenges his counsel's performance at the sentencing phase, those challenges are belied by the record. Defense counsel's performance at sentencing was neither objectively unreasonable nor prejudicial to Lewis.

    **C.**    **Evidentiary Hearing**

An evidentiary hearing is not required "if petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). If the record demonstrates material facts are disputed, the "court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) (citation omitted). This is the petitioner's burden. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007); *see also Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). To meet this burden, the petitioner must offer more than general assertions or allegations. *Id.* He must present "a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible.'" *Valentine*, 488 F.3d at 334.

Lewis has not demonstrated a disputed fact warranting an evidentiary hearing.  His challenges to defense counsel's performance at the change of plea phase and with respect to the base offense level for the controlled substance offenses are belied by the record.  Lewis' general assertion that he contested his criminal history computation is insufficient to merit an evidentiary hearing.  Moreover, Lewis does not assert that his purported challenges to his criminal history computation would have precluded the career offender designation.  Thus, an evidentiary hearing is not required, and the matter is hereby resolved on the written submissions.

### III.  CONCLUSION

For the reasons stated herein, Defendant-Petitioner Andre Lewis' Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 38) is DENIED.  This case is terminated and dismissed as final.  Pursuant to 28 U.S.C. § 2255(c) and Fed. R. App. P. 22(b), there is no basis on which to issue a certificate of appealability.  The Court further certifies pursuant to 18 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Date:   November 3, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE